## SHEPARD BOODY vs. JOHN GODDARD.

Exceptions do not lie to the refusal of a presiding judge, after the testimony in a
  · case is closed, to order a nonsuit, or to instruct the jury to return a verdict for
  the defendant, the exercise of such power being discretionary.
A person contracting to drive logs for the owner, cannot defend an action for
  carelessness in driving such as he undertook to drive, upon the ground that
  the owner did not turn out to be driven all the logs he contracted to turn out.
Testimony cannot be received, upon the part of the defendant, to change, alter, or
  vary a written contract, signed by the plaintiff, though it is not the contract
  upon which the action is founded.
Where a question as to the ownership of personal property depends upon oral as
  well as written evidence of it, the decision of it is properly left to the jury.
A person taking a lien upon lumber to secure advances "*until the same is finally
  marketed* and payment received therefor," is not authorized to manufacture
  the lumber at the risk of the general owner, and to account only for the net
  proceeds, provided they do not amount to the *market value* of the lumber at
  the time possession was taken under the contract.

ON EXCEPTIONS and MOTION to set aside the verdict as being
against the evidence.   As no question of law arose upon the mo-
tion, it is not necessary to report the testimony.

The case. upon the exceptions, is sufficiently stated in the
opinion.

*Goddard, pro se,* in support of the exceptions.

*Peters & Wilson,* for plaintiff.

CUTTING, J. · This action is assumpsit on a verbal contract set
forth substantially in the writ as follows, viz.: " Also for that at
said Portland, to wit, at said Ox Bow on the first day of March,
A. D. 1859, in consideration that the plaintiff then and there prom-
ised to pay said defendant one dollar and twenty-five cents per
thousand feet, for every thousand feet, said defendant then and
there promised the plaintiff to drive certain logs of plaintiffs, marked
T. × M., N. H., and F. × D., being 850 thousand, from their
then landing at said Ox Bow into Fredericton boom, as soon as the

driving season for driving logs there would permit; but said defendant then and there wholly neglected and refused so to do. Whereby said plaintiff was greatly damaged by loss of said logs, and not getting same to market, so as to make sale of same in due season, to wit, the sum of five thousand dollars."

That such a contract was made was proved by the plaintiff, and not denied by the defendant, but by him contended as a matter of fact for the jury that he had fulfilled it, and much evidence was introduced upon that point. But it seems the defense failed, and, after a protracted trial, the verdict was for the plaintiff, which the defendant now seeks to have set aside as against evidence and for erroneous rulings.

As to the motion, we see no cause to disturb the verdict. It was a case peculiarly within the province of the jury, and if they were rightly instructed, we cannot say that they have not come to a correct conclusion.

We will now proceed to consider the exceptions. The case finds that " The presiding judge was requested to instruct the jury that the plaintiff could not recover for damages, for not driving logs according to contract of March, 1859, as no such contract, as he had therein set forth, had been shown or pretended to be by any written evidence, or testified to by any witness. The presiding judge declined to give such instruction, but did instruct the jury that they might consider the contract so far as applicable to the N. H., T. M., and F. D. logs."

This request was in substance calling upon the judge after the testimony was closed, either to order a nonsuit or to instruct the jury to return a verdict for the defendant; neither of which could he rightfully demand. The exercise of such power is discretionary with the presiding judge.

But was there no evidence of the contract? The defendant swears that, " In the early part of May, 1859, he agreed with the plaintiff to drive the logs," &c. This on his part was a verbal contract, and he introduced a written contract bearing date the same

month, signed by the plaintiff, securing the payment for the price of driving, and of the tenor following, viz. :

" Whereas, John Goddard drove the past season a quantity of logs marked I. S. from the Ox Bow and its vicinity to Fredericton, and as he has this day agreed to drive the balance of said mark the ensuing season, as also to drive a lot of logs marked F. D., T × M., and N. × H., it is agreed that he shall receive, out of the proceeds of said logs, the sum of one dollar and twenty-five cents per M. for driving, said lumber to Fredericton, he receiving it in the Aroostook river.                    [Signed]      SHEPARD BOODY."

We perceive no material variance between the proof and the declaration, since it appears that the " Ox Bow " is a part of the Aroostook river.   And " to Fredericton " and " into Fredericton boom " must be understood to mean the same place, for it is unusual to leave logs afloat in tide-waters without some protection.

Again, it is contended that the plaintiff cannot recover on the contract, inasmuch as he did not turn all his logs of the above mark into the Aroostook river.   If this be so, the defendant undertook to drive what were turned in, and if the plaintiff's neglect was not waived, it did not authorize a want of vigilance in driving what the defendant took possession of, and undertook to drive.   But upon this part of the case no rulings are reported.

In relation to the second exception, testimony was properly excluded, tending to change, alter, or vary the contract of May, 1859, signed by plaintiff and produced by defendant, and no objection has been taken to the court's construction.

The third exception taken was, because the judge did not instruct the jury that, it appearing at one time N. H. Sawtell had an interest in certain permits, under which the N. H. and T. M. logs were cut, the plaintiff could not recover for those logs in this action.

If the assignment to Sawtell, of one-half of the plaintiff's interest in the permits, had been the only evidence introduced as to the title in the logs, perhaps the judge would have been justified in

giving the requested instruction. But it appeared in all the verbal testimony, throughout the trial, that the plaintiff was the sole owner, subject to certain liens for stumpage, supplies, &c., as by the several permits to him appears, that Sawtell never advanced anything, or assisted in any way in the lumbering business, or ever was recognized by the defendant in any of his active operations. On the other hand, the contract was made with the plaintiff; the promise was made to him alone. Under these circumstances, no judge would have been justified in withdrawing the question of ownership from the jury.

We come, at length, to the fourth and last exception, which really presents the only question on the merits. We have seen that much evidence was introduced as to the terms of the contract, the number of logs assumed to be driven and started by him on the Aroostook, the diligence, fidelity, and good faith, and extraordinary exertions of the defendant in driving, obstructed by "pokelogons and Roffer's hole," as would appear by testimony introduced by him, contradicted by that of the plaintiff. But all this, both as to the number of logs started, the number of logs accounted for, and his proper exertions on the drive, were questions for the jury.

There was no question that the defendant had heavy legal claims upon the logs; he had advanced large sums of money, out of which he was to be remunerated. But his claims were to be paid from the proceeds of the logs in a legal way. His claims were only as collateral security, in which, when paid, the operator had a reversionary interest, which the law will protect.

It seems that the logs, or a portion of them, which were started, were not only run to Fredericton, but down to St. John to the defendant's mills, and by him manufactured, and the net proceeds attempted to be accounted for, which, if the exhibit be true, would render him *minus* his advances and liabilities. In support of his proposition, he refers to that portion of the assignment of the permit which provides, that "this assignment and sale, being as collateral security for all advances, goods, money, supplies of all kinds, and all payments which said Goddard may make, furnish, or pay

for, or on account of said logs and timber, until the same is finally marketed, and payment received therefor."

Upon this point " the judge instructed the jury, that the contract creating a lien on logs did not authorize the defendant to manufacture the lumber at the risk of the plaintiff, and to account only for the net proceeds, provided they did not amount to the marketable value of the logs, at the time possession was taken under the contract."

This ruling we consider to be strictly correct, otherwise there can be no force in language, or protection to the operator, or the person granting the lien. Mark the language of the contract, " logs and timber finally marketed,"—not the proceeds after manufactured, subject to years' delay, and the rise or fall in the market, and besides the mode and manner ·of manufacture, and the operation of the mill, whether occasionally or otherwise. The plaintiff may well invoke the legal maxim, " In hæc vincula non veni."

Motion and exceptions overruled.

APPLETON, C. J.; KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.